IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANIEL T. GREGORY                                                                  PLAINTIFF

        v.                              Civil No.10-2070

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                     DEFENDANT

**MEMORANDUM OPINION**

    Plaintiff, Daniel Gregory, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

    The plaintiff filed his applications for DIB and SSI on November 28, 2006, alleging an onset date of July 11, 2006, due to chronic obstructive pulmonary disease ("COPD"), the residuals of a stroke and heart attack, hypertension, depression, headaches, and long-term memory loss.  Tr. 109-119, 128, 130, 137-138.

    An administrative hearing was held on September 17, 2008.  Tr. 16-52.  Plaintiff was present and represented by counsel.  At this time, plaintiff was 46 years of age and possessed a tenth grade education.  Tr. 25-26, 117, 135.  He had past relevant work ("PRW") experience as a poultry hanger, industrial cleaner, and restaurant cleaner.  Tr. 65, 131.

AO72A
(Rev. 8/82)

On November 7, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's COPD, hypertension, and depression did not meet or equal any Appendix 1 listing. Tr. 62. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled medium level work where the interpersonal contact was incidental to the work performed. Tr. 62-65. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a poultry handler, industrial cleaner, and restaurant cleaner as actually and generally performed. Tr. 66.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 20, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 7, 8.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence,

and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's failure to develop the record concerning Plaintiff's cardiac condition and memory loss. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).

In the present case, the evidence indicates that Plaintiff was treated for chest pain on several occasions. On July 25, 2006, Plaintiff presented in the emergency room with complaints of intermittent pain to the left upper chest near his shoulder. Tr. 175-177, 236-241. He had taken two to three Nitroglycerin tablets each day over the previous two to three days and received relief after a few moments. Plaintiff reported a history of hospitalization in Little Rock the previous month during which he underwent a cardiac evaluation and was found to have an 80% blockage. However, he could not remember the name of the hospital nor the doctor who treated him. Plaintiff's current pain subsided in the Emergency Room after the administration of one Nitroglycerin and one Aspirin. A chest x-ray revealed occasional calcified granulomas, but no acute infiltration. Tr. 174. By the following day, Plaintiff denied any further chest pain. Tr. 173. Dr. Wilson noted no change in his EKG, and his troponin level remained at 0. His blood pressure was also normal. He diagnosed Plaintiff with chest pain of unknown etiology, hypertension, and nicotine abuse and recommended smoking cessation. Dr. Wilson discharged

4

him with a prescription for a healthy heart diet, Metoprolol, and Aspirin. He also advised him to follow-up with a cardiologist and instructed him in the use of Nitroglycerin tablets. Tr. 173. However, Dr. Wilson indicated that Plaintiff's chest pain was worrisome, given that his respirations tended to affect his pain and that he had an elevated CPK. Tr. 239.

On April 3, 2007, Plaintiff underwent a general physical with Dr. William Swindell. Tr. 178-188. Plaintiff stated that he was seeking disability due to memory problems and persistent chest pain. Plaintiff reported chest pain, dyspnea with any type of walking, phobia of crowds, and tobacco addiction. He described his chest pain as a heaviness in the right side of his chest that radiated up into his right shoulder and right arm. Plaintiff indicated that working in his garden and picking up a large rock would precipitate the pain. He used nitroglycerin and this usually gave him relieve in less than four minutes. Occasionally, if he caught the pain very early and was able to just sit down and rest, the pain was relieved without the need for medication. Although Plaintiff had been hospitalized for chest pain in 2006 and told he needed to see a cardiologist, he indicated that he had not done so due to financial issues and lack of insurance.

An EKG was unremarkable and did not reveal any obvious ischemic changes, and a chest x-ray was normal. A cardiopulmonary exam showed hyper-resonance and decreased breath sounds. A physical revealed a normal range of motion in all joints and extremities with no joint abnormalities, deformities, instabilities, muscle weakness, or muscle atrophy. A sensory exam was also normal, and his gait and coordination were found to be within normal limits. Dr. Swindell diagnosed Plaintiff with chest pain of unknown etiology, among other things. He was, however, quite concerned over the lack of objective evaluation concerning Plaintiff's chest pain and was therefore not able to provide an assessment of Plaintiff's limitations. Tr. 178-188.

On April 27, 2007, Plaintiff underwent a mental diagnostic evaluation with Dr. Don Ott. Tr. 189-195. At this time, he reported to Dr. Ott that, in April 2006, he had been taken from work to the hospital after suffering a heart attack, but had no memory of any medical treatment prior to this.

On June 25, 2008, Plaintiff was treated at the River Valley Primary Care Services for complaints of hip and lower back pain. Tr. 231-233. No numbness or tingling down the legs or heavy lifting was reported. However, he did report problems breathing, concerns about memory, and occasional chest pain or discomfort over the previous several weeks for which he took Nitroglycerin with relief. Laboratory testing was ordered, and Plaintiff was given refills of all medications. Tr. 231-233.

On August 27, 2008, Plaintiff returned for a follow-up concerning his depression and blood pressure. Tr. 233-234. He was reportedly living with his daughter and had been having memory problems. He also reported experiencing chest pain twice per month, relieved with Nitroglycerine. Plaintiff was diagnosed with controlled hypertension, memory loss secondary to unknown, agoraphobia, and recurrent chest pain. The doctor discussed with Plaintiff the need for a stress test to re-evaluate his recurrent chest pain, but Plaintiff refused testing due to a lack of finances. Tr. 233-234.

In spite of Plaintiff's consistent reports that he had been hospitalized in Little Rock in April 2006 for chest pain and undergone a cardiac evaluation, the ALJ made no attempt to obtain those medical records. Further, although Dr. Swindell and the doctor at River Valley Primary Care Services voiced their about the lack of objective evidence concerning Plaintiff's cardiac status and Dr. Swindell indicated that he could not evaluate Plaintiff's RFC without further

6

information, the ALJ failed to order a consultative cardiac evaluation. Without a cardiac evaluation, the record contains absolutely no evidence upon which to base a conclusion that Plaintiff's cardiac impairment was non-severe. Accordingly, we believe remand is necessary to allow the ALJ to develop the record further concerning Plaintiff's cardiac symptoms. If the records from his hospitalization in Little Rock can not be located, then Plaintiff should be sent to a cardiologist for a consultative examination and an RFC assessment should be obtained from the cardiologist.

The evidence also raises a question concerning Plaintiff's long-term memory. As previously noted, Plaintiff also complained of memory problems to Dr. Swindell. Tr. 178-188. He reported a recent episode wherein he drove to his daughter-in-law's house and sat in her driveway, but could not remember how he got there. Dr. Swindell believed this to be an episode of transient global amnesia, and noted that Plaintiff was a very poor historian when he could not even remember whether his mother was alive or dead. Plaintiff did report a history of very heavy alcohol use, but denied drinking in the previous three to four months. Dr. Swindell diagnosed Plaintiff with memory loss/mental changes possibly related to alcohol consumption but indicated that he would require a psychological evaluation and testing.

On April 27, 2007, Plaintiff underwent a mental diagnostic evaluation with Dr. Don Ott. Tr. 189-195. Dr. Ott noted that Plaintiff was very vague and evasive about his symptoms and could not remember anything prior to April 2006. Plaintiff denied a history of hospitalization, medication, or outpatient treatment for mental or emotional disorders. He thought he might have been hospitalized for depression, but could not say for sure. Plaintiff reported no current psychotropic medications, and stated that he currently took only Nitroglycerin tablets and

7

medication for hypertension. He was alcohol dependent until April 2006, but denied current abuse or dependence, stating he was consuming as much as 30 cans of beer per day prior to his hospitalization in 2006. Plaintiff also smoked cigarettes at the rate of one to two packages per day. He was pleasant and cooperative during the interview with no signs of aggression or hostility. Plaintiff could not described his mood other than to state that he experienced frequent mood changes, erratic sleep, and decreased appetite. Dr. Ott noted that Plaintiff seemed very nonchalant and resigned. He avoided eye contact and seemed mildly defensive. There was no pressured speech or loosened associations. No symptoms of a thought disorder were observed or reported. His thoughts were rational, coherent, and goal-directed. There was no evidence of delusions or bizarre thinking. No auditory or visual hallucinations were observed or reported. Plaintiff appeared alert and oriented on all three spheres with no loss of contact with reality. He did, however, exhibit some major memory loss. Dr. Ott found no overt evidence of organic impairment, but indicated that it was certainly a possibility in light of Plaintiff's history of heavy alcohol consumption. Dr. Ott indicated that Plaintiff could be suffering from amnesia or may have very selective memory. His verbal skills were adequate and he could express himself. However, his capacity to cope with the mental demands of work was deficient. His memory was noted to be deficient, as well, which would interfere with some tasks such as operating heaving equipment. His history and symptoms did not support a psychotic or mood disorder diagnosis. Accordingly, Dr. Ott diagnosed him with alcohol dependence in early full remission and nicotine dependence and assessed him with a global assessment of functioning ("GAF") of 65-75. He also voiced some concern regarding the validity of Plaintiff's evaluation, given that he could not

be certain whether Plaintiff had true amnesia or was exaggerating his symptoms for secondary gain.  Tr. 189-195.

In June 2008, the doctor a River Valley Primary Care Services noted that Plaintiff needed a psychiatric evaluation and possible CT scan for memory impairment, but also stated that Plaintiff was unable to pay for these at that time.   Tr. 231-233.

In his opinion, the ALJ focused on Dr. Ott's statement that exaggeration was a possibility.  However, he failed to consider Dr. Ott's statement that he could not be certain whether Plaintiff was truly suffering from amnesia or exaggerating his symptoms for secondary gain.  He also failed to consider Dr. Swindell's notes concerning Plaintiff's memory problems and the June 2008 treatment note indicating that a CT scan was recommended, but that Plaintiff was unable to obtain one due to financial constraints.  *See Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir.1984) (holding that lack of financial resources to pay for hypertension and headache medicine justified failure to follow a treatment plan).  Given that Plaintiff's memory problems could impact his ability to perform work-related activities, as is evidenced by Dr. Ott's statement concerning moving machinery, we believe the ALJ should have developed the record further concerning this issue.  His failure to do so constitutes error and requires remand for further evaluation.  On remand, the ALJ is directed to send Plaintiff for a consultative evaluation to determine the full extent of his memory problems and to obtain an RFC assessment from that doctor as to Plaintiff's ability to perform work-related activities.

AO72A
(Rev. 8/82)

**IV.    Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of May 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE